[No. 21157. Department Two. June 22, 1928.]

JOHN J. REESE, JR., *by his Guardian ad litem John J. Reese, Respondent,* v. TACOMA RAILWAY & POWER COMPANY, *Appellant.*[1]

[1] STREET RAILROADS (15, 29)—INJURY TO PERSON ON TRACKS—NEGLIGENCE OF MOTORMAN—QUESTION FOR JURY. The negligence of a motorman in failing to see a boy whose foot was caught in tracks under repair is a question for the jury, where witnesses testified that they saw the boy and that small objects could be seen one hundred feet away, and that the motorman was not keeping a lookout and started up the car with the boy in full view.

[2] STREET RAILWAYS (23)—LAST CLEAR CHANCE. Where a boy's foot was caught in the tracks, his negligence had ceased, and it was the duty of the motorman to use reasonable diligence to discover his peril and avoid injuring him.

Appeal from a judgment of the superior court for Pierce county, Hodge, J., entered October 22, 1927, upon the verdict of a jury in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by a street car. Affirmed.

*F. D. Oakley* and *L. L. Thompson,* for appellant.

*Stuart H. Elliott* and *Percy P. Brush,* for respondent.

[1] Reported in 268 Pac. 599.

MAIN, J.—The plaintiff by his guardian *ad litem* brought this action to recover damages for personal injuries. The defendant denied negligence on its part and pleaded affirmatively the contributory negligence of the plaintiff. The cause was tried to the court and a jury and resulted in a verdict in favor of the plaintiff in the sum of $4,200. The defendant interposed a motion for judgment notwithstanding the verdict and also for a new trial, both of which were overruled. Judgment was entered upon the verdict and the defendant appeals.

The facts essential to be stated are these: The accident out of which the litigation arose happened on Sixth avenue in the city of Tacoma, about midway between South K and South L streets, at about 5:15 p. m., December 6, 1926. Sixth avenue extends east and west, South K and South L streets north and south. In the center of the blocks between these streets is an alley approximately sixteen feet wide. Upon Sixth avenue there are double street car tracks over which the appellant operates its cars. At the time of the accident, these were in a somewhat torn up condition, preparatory to the laying of new rails. The pavement on either side of the rails had been removed for a distance of eight or ten inches and there had been some excavation. Between the north and the south tracks there were debris and rails which were to be installed.

Just prior to the accident, the respondent left his home, at or near the southwest corner of the intersection of the alley with Sixth avenue, to do an errand for his mother which took him across Sixth avenue. He came out of the alley from the south, started across the tracks, and as he was crossing the south rail of the north track his foot caught and he fell across the south rail of that track with his body between that rail and the north rail. He was unable to extricate himself

from this position. A street car approaching from the east struck him and carried him a distance along the track of approximately fifty feet. The respondent was seriously injured.

[1] The principal question is whether the motorman of the street car should, in the exercise of ordinary care, have seen the respondent upon the track in time to have stopped the street car and avoided the injury. The street car at the time was proceeding at a speed of from twelve to fifteen miles per hour. It had stopped to the west of the intersection of Sixth avenue with south K street to receive and discharge passengers. The evidence, as it appears upon the question of whether the motorman in the exercise of reasonable care should have seen the respondent, will be stated with some detail. The motorman at no time saw the respondent and did not know that he had struck him until he was so told by a passenger upon the street car. The evening was clear, the street lights were burning, the headlight of the street car was on, as were the lights in the car. A boy about the age of the respondent, ten or eleven years, who was near the place of the accident, saw the respondent come out of the alley, saw him attempt to cross the tracks, fall and remain upon the track, in part testified:

"I could see him on the ground there by the rails, but I couldn't see whether his face was caught or not, but I seen him lying out on the track. The street car was about here, when I saw him get to the outbound rail. (Witness requested to mark with D). The street car was there when he was trying to get up. It was just about here, about half way. (Witness requested to mark an E with a circle around it). I observed the motorman. I saw him talking to a man in the lobby of the car before the car started, and he was looking to the right when the car was going. He was not looking straight ahead."

The distance between where the respondent fell and where the witness says the street car was at the time was about one hundred feet. That witness was in no better, if as good, a position to see the respondent upon the track in peril as was the motorman.

Another witness who was present or near the scene of the accident testified:

"I could have seen any small dog a block away. It was about 5:30 in the evening. The street lights were lit; the street car was lighted and the head lights burning."

Another witness who was a passenger upon the street car at the time and was standing near the motorman testified:

"I happened to be looking to the front of the car on the side. I don't know how long. I saw the street car strike the boy. I said to the operator 'you struck that boy.' He immediately set the brakes and stopped and said he didn't see any boy. That was about fifty feet after the boy was struck. . . . I did not pay much attention to what the motorman was doing. I glanced out on the track. I saw a boy. I saw him just about the time the car struck him. It seems to me he was standing up, when the motorman struck him. It looked that way to me. I couldn't tell whether he was coming from the right or the left. . . . I would not swear as a positive fact the boy was standing up. It might be possible the boy was in the track with his hand raised in the manner he stated. I just got a glimpse of the boy as the car struck him. It was my impression. I was not keeping a continuous lookout."

Another witness, who was also a passenger upon the street car and standing near the motorman at the time, testified:

"I could not see anybody at the head of the track as the car went along. There seemed to be a flash of something when he struck. That is all you could see.

I could not see anybody lying on the street there. Nothing was said until the flash and collision occurred. He didn't know what he hit. He thought probably it was an obstruction on the street. I do not think I could have seen the boy if he had been lying in the street. By flash, I mean a flicker of light. Just as soon as he struck, a flash came before my eyes. The motorman was not talking to anybody or conversing.''

The appellant calls special attention to this testimony of the respondent:

''No, when I pulled my foot up and I tried to raise up with my left elbow and raise my hand as high as I could and the street car was about here, about three yards away from me. I don't suppose he could see me.''

This testimony, of course, must be considered in connection with all the other evidence in the case.

From the testimony detailed, it cannot be held as a matter of law that the motorman in the exercise of reasonable care, could not have seen the respondent in time to have stopped the street car before striking him. The question was one for the jury. In addition to the lightness of the street, there is the evidence of one witness, above pointed out, who was at least one hundred feet from the respondent at the time and testified to seeing him upon the track. Another testified that a small object could have been seen a block away. As against this, there is some testimony tending to support the position that the motorman, by the exercise of reasonable care, could not have seen the respondent.

[2] Even though the respondent was guilty of negligence in attempting to cross the street car tracks at the place he did, this would not bar his recovery. He was in a place of peril from which he could not extricate himself. His negligence had ceased. It was the duty of the motorman to exercise reasonable care

to avoid the accident. Referring to the doctrine of last clear chance in *Johnson v. Seattle,* 141 Wash. 385, 250 Pac. 409, it was said:

"There are two branches to that doctrine. One is that if the plaintiff has been guilty of negligence, and that negligence continues up to the time of the injury, then the person driving the vehicle which does the damage is not liable unless he actually sees the plaintiff in time, by the exercise of ordinary care, to have avoided the injury. The other branch of the doctrine is that if the plaintiff has been guilty of negligence, and that negligence has placed him in a position of danger, and his negligence has ceased, then there is a duty upon the person driving the vehicle to exercise ordinary care to see the person in the position of danger and also to exercise ordinary care to avoid the accident. *Mosso v. Stanton Co.,* 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943; *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302."

The court properly submitted the question of whether the motorman was in the exercise of due care to the jury.

The case of *Gilcher v. Seattle Electric Co.,* 69 Wash. 78, 124 Pac. 218, is different in its facts. There, there was no evidence that the plaintiff's foot had been upon the rail of the street car track any perceptible time before it was run over. In the case now before us, there is evidence that the respondent had fallen and was in his place of peril when the street car was approximately one hundred feet distant and when it was just starting up again after having discharged and received passengers.

The case of *Smith v. Metropolitan St. R. Co.,* 201 S. W. (Mo.) 569, to which special attention is called by the appellant, is differentiated from the present case by reason of the fact that there the motorman, the plaintiff's witness, testified he was on the lookout and did not see the intestate and there was no evidence to

the contrary, and that the intestate could not have been seen in time to have stopped the car. In the case now before us, there is evidence that the respondent could have been seen in time to have stopped the car. It was stopped in a distance of ten feet after the motorman's attention was called to the fact that he had struck a boy.

The appellant assigns error upon the refusal of the court to give a requested instruction and objects to one of the instructions given. The instruction requested was properly refused, even though in the abstract it may be a correct statement of the law, because it was not applicable to any theory of the facts supported by the evidence. To the instruction given which is complained of, we see no objection. The jury were fully and correctly instructed upon all the issues in the case.

The judgment will be affirmed.

FULLERTON, C. J., ASKREN, HOLCOMB, and BEALS, JJ., concur.